## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Millicent Kirby, <br><br> Plaintiff, <br><br> v. <br><br> Patrick R. Donahoe, Postmaster General, <br><br> Defendant. | Civil No. 14-CV-270 (SRN/TNL) <br><br><br> **MEMORANDUM OPINION AND ORDER** |

Philip G. Villaume, Jeffrey D. Schiek, and Thomas H. Priebe, Villaume & Schiek, P.A., 2051 Killebrew Drive, Suite 611, Bloomington, Minnesota 55425, for Plaintiff.

C.J. Williams, United States Attorney's Office – Department of Justice, 111 Seventh Street SE, Box 1, Cedar Rapids, Iowa 52401, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Defendant Patrick R. Donahoe's Motion to Dismiss [Doc. No. 40].  For the reasons stated below, Defendant's Motion is granted in part and denied in part.

## II.    BACKGROUND

This lawsuit stems from Plaintiff Millicent Kirby's employment with the Office of the Inspector General ("OIG"), the investigative branch of the United States Postal Service. (Second Am. Compl. [Doc. No. 39] ¶¶ 3, 5.)  The allegations in the Second Amended Complaint date back to May 20, 2011, when Plaintiff was interviewed by Daniel Budnick as part of an employment review.  (Id. ¶ 6.)  According to Plaintiff, Mr. Budnick made

sexually-explicit remarks during the interview, including "referring specifically to his testicles, revealing details of intimacy with his wife, and telling the Plaintiff she was beautiful." (Id. ¶ 9.) Plaintiff also alleges that she learned that, immediately following the interview, Mr. Budnick asked her co-worker "whether the Plaintiff had ever made a pornographic video." (Id. ¶ 10.) Plaintiff contends that she reported Mr. Budnick's conduct to her supervisor, Assistant Special Agent in Charge Mark Hines, in May 2011, but that she told Mr. Hines that she did not want to file a complaint for sexual harassment because she was afraid of being retaliated against and being adversely affected in her employment. (Id. ¶¶ 11–13.)

According to Plaintiff, Mr. Budnick falsely reported that he had asked her certain questions during the employment review, (id. ¶¶ 14, 18), and he was then interviewed for a second time based on that false information, (id. at 17). This interview was conducted by Mr. Hines on October 4, 2011. (Id. ¶ 16.) One week after the interview, Mr. Hines informed Plaintiff that she was under official investigation for lack of candor and took possession of her firearm and official vehicle. (Id. ¶ 19.) Mr. Hines also re-assigned Plaintiff to desk duty. (Id.) Plaintiff asserts that, although her supervisors knew as of October 19, 2011 that Mr. Budnick had provided false information and that Plaintiff was not lacking in candor, they continued to investigate her and she was interviewed again on October 27 and December 8, 2011. (Id. ¶¶ 20–22, 24–25.) Meanwhile, in November 2011, Mr. Hines gave Plaintiff a low pay for performance ("PFP") score of 58%, even though Plaintiff's computer-generated score was 93%, "thereby substantially impacting her current and future income." (Id. ¶¶ 23, 28.)

Thereafter, on approximately February 21, 2012, Mr. Hines issued Plaintiff a Letter of Warning in Lieu of Suspension ("LOW"), which imposed disciplinary action on Plaintiff. (Id. ¶ 31.) Plaintiff alleges that all of these actions were taken "because of the Plaintiff's gender and reports and opposition to sexual harassment." (Id. ¶¶ 19, 23, 28; see id. ¶¶ 27, 31.) She also alleges that the report regarding the investigation and the LOW have been made part of her personnel file and are "part of ongoing retaliation and harassment by the Defendant against the Plaintiff because of her gender and because of her reports and opposition to sexual harassment." (Id. ¶ 33; see id. ¶ 42.)

On February 29, 2012, Plaintiff appealed the disciplinary action imposed by Mr. Hines to Area Special Agent in Charge David Barnes. (Id. ¶ 36.) Mr. Barnes affirmed Mr. Hines's decision on March 9, 2012 in a written opinion stating, "[Y]our decision to withhold relevant information during your background check is conduct that impairs your ability to perform official duties." (Id. ¶¶ 36, 39.) On March 22, 2012, Plaintiff appealed Mr. Barnes's decision to Deputy Assistant Inspector General for Investigations Lance Carrington. (Id. ¶ 38.) On April 16, 2012, Mr. Carrington issued a written decision partially dismissing the disciplinary action, and specifically dismissing the discipline for lack of candor. (Id. ¶ 41.)

During this time period, Plaintiff alleges, she also was denied two job transfers or promotions on account of her gender, reports of and opposition to sexual harassment, and low PFP score. (See id. ¶¶ 30, 37, 92.) Plaintiff applied for these positions in January and March 2012. (See id. ¶¶ 30, 37.) Plaintiff claims that, although she was qualified for

these positions, Defendant ultimately chose a male with lesser qualifications in each instance.  (See id.)

According to the Second Amended Complaint, Plaintiff requested Equal Employment Opportunity ("EEO") counseling on March 20, 2012 and raised complaints in her Pre-Complaint Counseling Information about Defendant relating to sexual harassment and retaliation.  (Id. ¶ 43.)  In particular, she contends that she told the EEO counselor about the sexual harassment by Mr. Budnick and the subsequent investigation. (Id. ¶ 44.)  On April 18, 2012, EEO Dispute Resolution Specialist Arlene Gordon issued a final interview letter in which she accepted as true Mr. Carrington's general denials of Plaintiff's complaint.  (Id. ¶¶ 46–47.)  Ms. Gordon conducted no further investigation. (Id. ¶ 48.)

Plaintiff then filed a formal EEO Complaint on May 4, 2012, in which she checked the box for "sex" discrimination and described the discrimination as having occurred from "May 20, 2011 through April 18, 2012 and continuing."  (Id. ¶¶ 49–51 & Ex. A.)  She described her interview with Mr. Budnick, the LOW, the "investigation into [her] character," the low PFP, her relegation to desk duty, and the denials of the January and March 2012 transfer or promotion applications.  (Id., Ex. A.)  According to Plaintiff, on about May 11, 2012, EEO Services Specialist Brenda Thompkins issued an order partially accepting and partially dismissing Plaintiff's formal EEO Complaint and improperly summarized Plaintiff's allegations by failing to "frame any issue" related to retaliation or hostile work environment and accepting only Plaintiff's sex discrimination claim.  (See id. ¶¶ 52–59.)  Plaintiff appealed Ms. Thompkins's decision on June 27,

2012, and, at the same time, amended her EEO Complaint to describe additional retaliatory actions taken by Defendant.  (Id. ¶¶ 64–65.)  The EEO issued a final decision on November 26, 2013, finding in Defendant's favor but giving Plaintiff the right to sue Defendant in federal court.  (Id. ¶ 70.)

Meanwhile, on May 24, 2012, Plaintiff served Defendant with a notice of claims. (Id. ¶ 62.)  She asserts that, after serving the notice, and because of her gender and reports of sexual harassment, Defendant's employees "engaged in an ongoing pattern of retaliation toward [her]."  (Id. ¶ 63.)  According to Plaintiff, her supervisors gave her low PFP scores in December 2012 and December 2013, told her she had to attend training that she had already completed, gave her conflicting instructions on her work assignments in January 2014, prevented her from having her attorney present at a meeting in January 2014, and required her to complete biweekly case reviews.  (Id. ¶¶ 68, 71, 73–75, 77–78, 81.)  During the January 2014 meeting with Special Agent Joseph Schwartz, Plaintiff was questioned about "numerous unfounded allegations," and she reported that she felt she was being harassed and working in a hostile work environment and that she had filed a complaint to that effect.  (Id. ¶ 74.)  She alleges that she was "told that she would be given another LOW for the issues discussed at this meeting."  (Id. ¶ 75.)

Plaintiff filed her original Complaint in this Court on January 29, 2014, and she received her second LOW on February 25, 2014.  (Id. ¶¶ 79, 82.)  This LOW was issued by Mr. Schwartz for alleged "failure to follow instructions, careless performance of duties, and unprofessional conduct."  (Id. ¶ 82.)  Plaintiff appealed the LOW, and it was upheld on April 11, 2014.  (Id.)  She contends that the LOWs "have and will continue to

hinder [her] career advancement within the [OIG] along with her future employment possibilities," (id. ¶ 99), and have damaged her professional reputation, (id. ¶ 100).

In addition, Plaintiff asserts that she was denied three more job transfers or promotions on account of her gender, reports of and opposition to sexual harassment, low PFP score, and EEO and federal district court complaints.  (See id. ¶¶ 60, 61, 80, 92.) Plaintiff applied for these positions in June 2012, August 2012, and January 2014.  (See id. ¶¶ 60, 61, 80.)  Plaintiff claims that, although she was qualified for these positions, Defendant ultimately chose a male with lesser qualifications in each instance.  (See id.)

On April 8, 2014, Plaintiff again requested EEO counseling and filed pre-Complaint Counseling Information.  (Id. ¶ 87.)  She then filed a second formal EEO Complaint on May 29, 2014, in which she described her report of Mr. Budnick's sexual harassment, the filing of her formal May 2012 EEO Complaint, the serving of the May 2012 notice of claims, the denial of her August 2012 transfer request, the imposition of low PFP scores and bi-weekly case reviews, her supervisors' provision of conflicting instructions, the requirement that she re-attend training, the January 2014 meeting and the prohibition of the presence of her attorney at that meeting, and the February 2014 LOW. (See id. ¶¶ 88–90 & Ex. B.)  This time, Plaintiff checked the boxes on the form for both "sex" discrimination and "retaliation."  (See id., Ex. B.)  The EEO issued a final decision on December 3, 2014, finding in Defendant's favor and giving Plaintiff the right to sue Defendant in federal court.  (Id. ¶¶ 110–11.)

As discussed above, Plaintiff filed this lawsuit in January 2014.  The parties twice stipulated to Plaintiff amending her complaint, which she did on April 30, 2014 [Doc.

No. 14] and January 8, 2015 [Doc. No. 39].  The Second Amended Complaint is now the

operative complaint in this action.  In it, Plaintiff enumerates two causes of action against

Defendant:  "Discrimination in Violation of Federal Law" (Count I), (see id. ¶¶ 112–44);

and "Retaliation/Reprisal in Violation of Federal Law" (Count II), (see id. ¶¶ 145–79).

Defendant, construing Plaintiff's claims as arising under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e, et seq., moved to dismiss the Second Amended Complaint

on February 9, 2015.  The matter was heard on April 3.

## III.    DISCUSSION

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of

Civil Procedure, for failure to state a claim upon which relief can be granted, the Court

assumes the facts in the complaint to be true and construes all reasonable inferences from

those facts in the light most favorable to the plaintiff.  Morton v. Becker, 793 F.2d 185, 187

(8th Cir. 1986).  However, the Court need not accept as true wholly conclusory allegations,

see Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal

conclusions the plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d

1486, 1488 (8th Cir. 1990).  In addition, the Court ordinarily does not consider matters

outside the pleadings on a motion to dismiss.  See Fed. R. Civ. P. 12(d).  The Court may,

however, consider exhibits attached to the complaint and documents that are necessarily

embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir.

2003), and may also consider public records, <u>Levy v. Ohl</u>, 477 F.3d 988, 991 (8th Cir. 2007).[1]

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The U.S. Supreme Court, in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), clarified that this Rule does not require that a complaint contain "detailed factual allegations," but it does require that it contain facts with enough specificity "to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555. In other words, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." <u>Id.</u> at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555). Thus, to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.

Here, Defendant argues that Plaintiff's discrimination and retaliation claims must be dismissed because: (1) Plaintiff failed to plead that she exhausted her administrative remedies; and (2) she failed to allege sufficiently detailed facts to support either of her claims. (Def.'s Mem. in Supp. of Mot. to Dismiss [Doc. No. 41] ("Def.'s Mem.") at 1–2.) Defendant also argues that Plaintiff's claims cannot be considered claims for hostile work

---

[1]    Plaintiff's May 4, 2012 and May 29, 2014 EEO Complaints are attached to the Second Amended Complaint as Exhibits A and B, respectively. The Court may properly consider these documents because they are attached to the Second Amended Complaint and are necessarily embraced by the pleadings.

environment because she did not allege that cause of action in a separate count of her complaint.  (Id. at 13.)  Plaintiff, on the other hand, argues that all of her claims are timely because "[she] has alleged that Defendant's actions constituted a 'continual and ongoing pattern of discrimination and retaliation' which created an 'abusive and hostile working environment,'" (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss [Doc. No. 47] ("Pl.'s Opp.") at 18 (quoting Second Am. Compl. ¶¶ 103–04)).[2]

Counts I and II of the Second Amended Complaint are titled "Discrimination" and "Retaliation/Reprisal," respectively.  (Second Am. Compl. at 23, 29.)  However, in those Counts, Plaintiff repeatedly refers to being subjected to a "hostile working environment." (Id. ¶¶ 132, 140–42, 148, 151–52, 154, 156, 16, 172–74.)  Accordingly, the Court construes Plaintiff's Second Amended Complaint as asserting causes of action for discrimination, retaliation, and hostile work environment, and the Court will analyze the sufficiency of Plaintiff's pleadings in terms of timeliness and specificity for each cause of action.

## A.    Exhaustion of Administrative Remedies

As discussed above, Plaintiff asserts claims for sex discrimination, retaliation, and hostile work environment.  Before a federal court can hear any of these claims, however, a plaintiff must first exhaust her administrative remedies.  42 U.S.C. § 2000e-16(c).  In

---

[2]    Plaintiff also argues that Defendant's Motion should be denied for failure to comply with Local Rule 7.1(c) because Defendant failed to file its Notice of Motion and Meet and Confer Statement at the same time that it filed its Motion and supporting Memorandum of Law. (Pl.'s Opp. at 17.)  While Defendant did not file these documents simultaneously as technically required by the Rule, all of the documents were filed the requisite 42 days prior to the hearing.  Because Plaintiff has not demonstrated any prejudice resulting from Defendant's failure to file the documents simultaneously, the Court finds that Defendant's technical violation does not warrant denial of its Motion.

particular, a federal employee is required to consult an EEO counselor prior to filing a

complaint in order to try to resolve the matter informally, and the employee must initiate

this contact "within 45 days of the date of the matter alleged to be discriminatory or, in the

case of personnel action, within 45 days of the effective date of the action."  29 C.F.R.

§ 1614.105(a)(1).

In National Railroad Passenger Corp. v. Morgan, the U.S. Supreme Court

explained the difference between claims for discrimination or retaliation and claims

based on a hostile work environment in terms of evaluating timeliness.  536 U.S. 101,

105 (2002).  In regard to the former, the Court held that "[Title VII] precludes recovery

for discrete acts of discrimination or retaliation that occur outside the statutory time

period."  Id.  These "discrete" discriminatory or retaliatory acts include "termination,

failure to promote, denial of transfer, or refusal to hire," id. at 114, which "'occur[]' on

the day that [they] 'happen[],'" id. at 110.  The Court found that such acts "are not

actionable if time barred, even when they are related to acts alleged in timely filed

charges," but that Title VII does not prevent a plaintiff "from using the prior acts as

background evidence in support of a timely claim."  Id. at 113.

In regard to the latter, the Court stated:

> Hostile environment claims are different in kind from discrete acts.  Their
> very nature involves repeated conduct.  The 'unlawful employment practice'
> therefore cannot be said to occur on any particular day.  It occurs over a series
> of days or perhaps years and, in direct contrast to discrete acts, a single act of
> harassment may not be actionable on its own.  Such claims are based on the
> cumulative effect of individual acts.

Id. at 115 (internal citations omitted).  Therefore, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  Id. at 122.  In other words, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  Id. at 117.

Thus, according to the Eighth Circuit, "[t]he Court in Morgan acknowledged an exception to its bar on the consideration of discriminatory actions that occur outside the statutory period, but solely for hostile work environment claims."  Rebouche v. Deere & Co., --- F.3d ---, 2015 WL 3372251, at *3 (8th Cir. 2015) (citing Morgan, 536 U.S. at 117); see Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 851 (8th Cir. 2012) ("The Tenth Circuit explained that Morgan thus 'abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.'") (quoting Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003)).  Therefore, the continuing violation doctrine, under which a claim may be based on a series of events that occur over a period of time, only applies to Title VII claims alleging a hostile work environment.  See Rebouche, 2015 WL 3372251, at *3 (refusing to consider discriminatory actions that occurred outside of the statutory period because the plaintiff had not asserted a hostile work environment claim); Betz v. Chertoff, 578 F.3d 929, 937–38 (8th Cir. 2009) (rejecting the plaintiff's argument that her retaliation claim was not time-barred because it

was based on a continuing violation and the plaintiff had not asserted a hostile work

environment claim); Rowe v. Hussmann Corp., 381 F.3d 775, 779 (8th Cir. 2004)

("Because her charge alleged a hostile work environment—a claim based on the

'cumulative effect of individual acts'—[the plaintiff's] hostile work environment claim was

timely if 'an act contributing to [the] claim occur[red] within the filing period . . . .'")

(citation omitted).

Applying these principles, this Court finds that Plaintiff's sex discrimination and

retaliation claims are untimely—and cannot proceed—to the extent that they are based on

discrete acts occurring outside of the 45-day window.  See Burkett v. Glickman, 327 F.3d

658, 660 (8th Cir. 2003) (stating that "the principles set forth [in Morgan] govern cases

involving the 45-day deadline for federal workers' claims").  However, those claims are

timely to the extent that they are based on discrete acts falling within the 45-day window,

and the discrete acts occurring outside of the 45-day window may be used to provide

context for the actionable claims.  Likewise, Plaintiff's hostile work environment claim is

timely because at least one act contributing to that claim occurred within the filing period.

### 1.      Sex discrimination and retaliation

Defendant contends that all of Plaintiff's allegations of sex discrimination that

occurred before February 4, 2012—which is 45 days prior to Plaintiff's first alleged contact

with an EEO counselor on March 20, 2012—are untimely.  (See Def.'s Mem. at 8–10.)

Therefore, according to Defendant, Plaintiff's allegations relating to sexual harassment by

Mr. Budnick and the investigation of Plaintiff's character must be dismissed.  (Id. at 9–10.)

Defendant also asserts that Plaintiff's allegations that she was passed over for a promotion

on March 7, 2012 must be dismissed because she failed to raise them in her first EEO

Complaint.  (Id. at 10.)  In addition, Defendant argues that all of Plaintiff's allegations of

sex discrimination that occurred before February 22, 2014—which is 45 days prior to

Plaintiff's second alleged contact with an EEO counselor on April 8, 2014—are untimely.

(Id. at 10–11.)  These allegations include Defendant's failure to promote or transfer Plaintiff

in June and August 2012 and January 2014, as well as Defendant's requirement that

Plaintiff re-attend certain training in January 2014.  (Id.)  Thus, according to Defendant, the

only timely allegations of sex discrimination are those relating to the issuance of the

February 21, 2012 and February 25, 2014 LOWs.  (Id. at 10–11.)  Similarly, Defendant

asserts that Plaintiff made a retaliation claim only in her second EEO complaint and so the

February 25, 2014 LOW is also the only incident that could support a retaliation claim.  (Id.)

While Plaintiff relies heavily on the argument that her claims are timely because

she has alleged continuing violations that amount to a hostile work environment

(discussed in Part III.A.2), she also asserts that at least some discrete adverse

employment actions were timely raised.  (See Pl.'s Opp. at 24–25.)  In particular,

Plaintiff points to the March 7, 2012 denial of a promotion and the LOWs.  (See id.)  She

also states that "a question of fact exists as to whether each of the individual acts of

retaliation prior to the LOW[s], standing alone, is sufficiently adverse to create a cause of

action."  (Id. at 25.)

The Court finds that Plaintiff's sex discrimination claim in Count I is timely to the

extent that it is based on the discrete acts of issuance of the LOWs and the alleged March 7,

2012 denial of a promotion.  Plaintiff indicated in each of her formal EEO Complaints that

13

she was asserting a claim for sex discrimination.  As Defendant concedes, each of the

LOWs were referenced in the formal EEO Complaints and fall within the relevant 45-day

statutory period.  And, contrary to Defendant's assertion, Plaintiff did specifically refer in

her first formal EEO Complaint to the March 7, 2012 denial of promotion, which also fell in

the 45-day statutory period.

The Court finds that Plaintiff's retaliation claim in Count II is timely to this same

extent.  Although, as Defendant notes, Plaintiff did not check the "retaliation" box in her

first formal EEO Complaint, that fact alone is insufficient to require dismissal of her

claim as long as Defendant had notice of the subject matter of the charge and the basis for

the claim.  See, e.g., Malone v. Ameren UE, 646 F.3d 512, 516 (8th Cir. 2011) ("While a

charge of discrimination need not specifically articulate the precise claim, it must

nevertheless be sufficient to give the employer notice of the subject matter of the charge

and identify generally the basis for a claim.") (citation and internal quotation marks

omitted).  Indeed, "[t]he breadth of the civil suit is . . . as broad as the scope of any

investigation that reasonably could have been expected to result from the initial charge of

discrimination."  Stuart v. Gen. Motors Corp., 217 F.3d 621, 631 (8th Cir. 2000).  Even

in Martin v. Trinity Marine Products, Inc., the case relied upon by Defendant in support

of dismissal, the court found that the plaintiff failed to administratively exhaust his

gender discrimination claim not simply because he failed to check the box for "sex"

discrimination but also because "his narrative description of his claims before the EEOC

[did] not mention gender discrimination in any way."  No. 1:11CV181 SNLJ, 2012 WL

1620164, at *3 (E.D. Mo. May 9, 2012).

14

Not only is it not clear to the Court that Plaintiff's narrative description of her claim in the first formal EEO Complaint would not have provided notice of a retaliation claim, but Plaintiff alleges in her Second Amended Complaint that the EEO Services Specialist improperly summarized Plaintiff's allegations in that EEO Complaint by failing to frame an issue related to retaliation.  Plaintiff also alleges that she appealed the Specialist's decision and amended her EEO Complaint to specifically state a claim for retaliation, and that it was again improperly construed on appeal.  These are issues of fact that the Court cannot properly resolve on a motion to dismiss.

Finally, while there may be a question of fact regarding whether the alleged individual acts of retaliation that occurred prior to the LOWs were sufficiently adverse to support a claim of retaliation, as Plaintiff argues, Title VII precludes recovery for discrete acts of retaliation that occur outside the statutory time period.  Thus, only the acts that were raised within the statutory period—which Plaintiff does not dispute is on or after February 4, 2012 for the first formal EEO Complaint and on or after February 22, 2014 for the second formal EEO Complaint—can be used as a basis for Plaintiff's retaliation claim.

### 2.      Hostile work environment

Defendant next argues that Plaintiff cannot maintain a hostile work environment claim because she did not allege a hostile work environment in her EEO Complaints, (Def.'s Mem. at 13), and because "Plaintiff has not adequately pled a continuing violation that would connect all of the untimely events to those timely exhausted," (id. at 12). Plaintiff, on the other hand, maintains that her EEO Complaints demonstrate that

Defendant's actions were "part of [a] continual and ongoing pattern of harassment, discrimination, and retaliation."  (Pl.'s Opp. at 20.)  She also asserts that, for purposes of establishing a continuing violation claim, only a single act contributing to the claim must fall within the statutory period and, here, the LOWs suffice.  (Id. at 19–21.)

The Court finds that Plaintiff's hostile work environment claim was timely asserted. First, although there is no "hostile work environment" box to check on the EEO complaint forms, Plaintiff specifically alleged in the narrative attached to the second formal EEO Complaint that Defendant had created a "hostile work environment."  As for the first formal EEO Complaint, Plaintiff noted on the form that the discrimination was "continuing," and she contends that the EEO Services Specialist improperly failed to frame an issue related to hostile work environment and that the first EEO Complaint was amended to specifically state a claim for hostile work environment.  Again, these are issues of fact that the Court cannot properly resolve on a motion to dismiss.

Second, Plaintiff's hostile work environment claims are not time barred on the face of the Second Amended Complaint because she has alleged acts that are part of the same unlawful employment practice.  Importantly, as discussed in more detail below, Plaintiff points to the "unnecessarily prolonged investigation" to which "a string of actions by Defendant . . . are all tethered" and that culminated in issuance of the LOWs.  (Pl.'s Opp. at 21, 23.)  Because, at the very least, the LOWs fall within the 45-day time period, the entire time period of the hostile environment may be considered for purposes of determining liability.  Thus, while Plaintiff cannot, through her hostile work environment claim, make actionable any discrete acts that were not raised within the statutory period (such as

16

Defendant's failure to promote or transfer Plaintiff in June and August 2012 and January 2014), her hostile work environment claim—to the extent that it survives scrutiny in the following section—may encompass, for example, the investigation into Plaintiff's character.

### B.     Sufficiency of the Facts Pled

Defendant also argues that Plaintiff's claims should be dismissed because she did not plead the facts supporting her claims with sufficient detail.  (Def.'s Mem. at 13.)  Rather, Defendant contends, "Plaintiff's Second Amended Complaint is replete with conclusory allegations and leaves out essential details."  (Id. at 14.)  In particular, Defendant asserts that Plaintiff has failed to allege:  facts showing that the alleged investigation was motivated by Plaintiff's gender, (id.); details relating to the suspension of Plaintiff's security clearance, confiscation of her government firearm and vehicle, limitation of her job duties, her relegation to desk duty, and her receipt of low PFP scores, or facts tying those actions to Plaintiff's gender or retaliation, (id. at 15); the circumstances surrounding the alleged denials of promotions and transfers or facts showing that the decisions were based on her gender or retaliation, (id. at 15–17, 19); facts establishing the bases for the LOWs or that they were tied to her gender or retaliation, (id. at 16, 18); facts surrounding calculation of the PFP scores or tying those scores to Plaintiff's gender or retaliation, (id. at 18); facts regarding the requirement that Plaintiff attend training a second time or tying that decision to her gender or retaliation, (id.); facts showing that male employees did not have biweekly case reviews or that imposition of biweekly case reviews was retaliatory, (id. at 19); facts showing that the goals she was asked to complete were unattainable or related to her gender or retaliation, (id. at 20); and facts showing who issued improper instructions or reprimands

17

to Plaintiff or facts tying those actions to her gender or retaliation, (id. at 20–21).  Defendant

also argues that Plaintiff has failed to plead facts sufficient to meet a "but-for" causation

standard as required under Title VII for retaliation, and that the alleged conduct was not

"extreme" enough to rise to the level of a hostile work environment.  (Id. at 21–23.)

Plaintiff, on the other hand, argues that Rule 8 does not require pleading of "specific

dates, names, and times" as requested by Defendant and that her 38-page Second Amended

Complaint and attached exhibits provide sufficient detail to satisfy the Rule 12 standard.

(Pl.'s Opp. at 27.)  Plaintiff asserts that Defendant is attempting to hold her to a summary

judgment standard and that, instead, no evidence is required at this stage and all inferences

must be drawn in her favor.  (Id. at 28.)  Moreover, Plaintiff contends that whether she can

ultimately satisfy the causation and hostile work environment standards are questions for a

jury.  (Id. at 29–30.)  The Court agrees with Plaintiff and finds that—at this stage of the

proceedings—Plaintiff has adequately alleged claims for sex discrimination, retaliation, and

hostile work environment to the extent discussed below.

### 1.      Sex discrimination and retaliation

An employee can prove a Title VII sex discrimination claim by providing direct

evidence of unlawful discrimination or, in the alternative, by creating an inference of such

discrimination under the McDonnell Douglas burden-shifting framework.  See Turner v.

Gonzales, 421 F.3d 688, 694 (8th Cir. 2005).  Under the first step of the McDonnell

Douglas analysis, the employee must establish that:  "1) the employee belonged to a

protected class; 2) she was qualified to perform her job; 3) she suffered an adverse

employment action; and 4) she was treated differently from similarly situated males."  Id.

The fourth element also may be met by providing evidence raising an inference of discrimination.  Id.  A court applies this same framework in analyzing retaliation claims under Title VII.  Id. at 695.  To establish a prima facie case, an employee must establish that:  "1) the employee engaged in activity protected under Title VII; 2) an adverse employment action was taken against her; and 3) there was a causal connection between the two."  Id. at 696.

While a plaintiff ultimately must prove these elements in order to prevail on her claims (in the absence of direct evidence of discrimination), "a plaintiff need not plead facts establishing a prima facie case of discrimination under McDonnell Douglas in order to defeat a motion to dismiss."  Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1014 (8th Cir. 2013) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–11 (2002)).  As the U.S. Supreme Court explained in Swierkiewicz v. Sorema N.A.:

> Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case.  Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases.

534 U.S. at 512.  Rather, as discussed above, a discrimination or retaliation complaint need only contain a short and plain statement of the claim that provides the defendant with fair notice of the grounds upon which the claim rests.  Hager, 735 F.3d at 1014 (citing Swierkiewicz, 534 U.S. at 508, 512).  "[T]he Federal Rules do not contain a heightened pleading standard for employment discrimination suits."  Swierkiewicz, 534 U.S. at 515.

Applying these standards, the Supreme Court in Swierkiewicz held that the plaintiff "easily satisfie[d]" federal pleading requirements for his national origin discrimination

claim where he alleged that he had been terminated on account of his national origin in

violation of Title VII, he detailed the events leading to his termination, he provided relevant

dates, and he alleged the nationalities of some of the persons involved in his termination.

Id. at 514.  On the other hand, in Hager v. Arkansas Dep't of Health, the Eighth Circuit

affirmed dismissal of a § 1983 gender discrimination claim where the plaintiff made "only

two conclusory allegations of gender discrimination:  (1) she '[was] a victim of gender

discrimination;' and (2) she 'was discharged under circumstances [similarly] situated

nondisabled males . . . were not.'"  735 F.3d at 1015.  Importantly, the court noted that the

plaintiff "[did] not allege any gender-related comments or conduct before her termination"

or "facts showing that similarly situated employees were treated differently."  Id.

The only case relied upon by Defendant in support of its argument that the facts

alleged in this case are not sufficiently detailed or tied to Plaintiff's gender or retaliation is

McCleary-Evans v. Maryland Dep't of Transportation, 780 F.3d 582 (4th Cir. 2015).  In that

case, the Fourth Circuit affirmed the dismissal of a Title VII race and gender discrimination

claim where the plaintiff alleged that the defendant did not hire her because the decision-

makers were biased against African-American women and instead hired White males.  Id. at

583–84.  The court noted that "the complaint did not include any allegations regarding the

qualifications or suitability of the persons hired to fill the two positions," id. at 584, and

went on to find that the lack of such an allegation distinguished the complaint from that at

issue in Swierkiewicz, in which the plaintiff had alleged that the comparator "was 'less

experienced and less qualified,'" id. at 586 (quoting Swierkiewicz, 534 U.S. at 508).

This Court already has determined that Plaintiff's sex discrimination and retaliation claims are timely to the extent that they are based on issuance of the LOWs and the alleged March 7, 2012 denial of a promotion.  The Court now finds that, while Plaintiff's retaliation claim may proceed on each of these bases, Plaintiff's sex discrimination claim may proceed only to the extent that it is based on the alleged March 7, 2012 denial of a promotion.

### a.        Denial of transfer/promotion

In regard to the allegation regarding the March 7, 2012 denial of a promotion or transfer, Defendant claims that "Plaintiff fail[ed] to allege facts showing how she was more qualified than the person who received the promotion, what person made the decision, that the decision-maker knew of her gender, or that the decision-maker knew she had complained about anything."  (Def.'s Mem. at 16.)  However, as is evident from the authorities discussed above, such detailed allegations are not required.  Rather, Plaintiff need only allege sufficient facts to provide Defendant notice of her claim, which she has done.

In her Second Amended Complaint, Plaintiff alleges:

> On or about March 7, 2012, the Plaintiff applied for an ASAC position in Greensboro, North Carolina.  Because of the Plaintiff's gender and reports of sexual harassment along with the low PFP given to the Plaintiff, the Plaintiff was not selected for the position in Greensboro, North Carolina.  Although the Plaintiff was fully qualified for the position, a male with lesser qualifications was ultimately chosen for the job.

(Second Am. Compl. ¶ 37.)  And, in her first formal EEO Complaint, which is attached to and incorporated into the Second Amended Complaint, Plaintiff states:

> On March 7, 2012, I submitted my application for an ASAC vacancy in Greensboro, NC, for which I am well qualified.  On April 18, 2012, my

> manager advised me interviews had taken place for the job and I was not even
> selected for an interview.
>
> DAIGI Lance Carrington is the manager for both the St. Paul and Greensboro
> offices.

(Id., Ex. A.)  Thus, Plaintiff has alleged not only that she was denied a promotion or transfer

based on her gender and that she was qualified for the position, but, unlike the plaintiffs in

Hager and McCleary-Evans, Plaintiff also has alleged that a male with lesser qualifications

was ultimately chosen for the position.  And, contrary to Defendant's assertion, Plaintiff

alleges who—Lance Carrington, a male—made the decision.  Moreover, it is plausible,

based on the other allegations in the Second Amended Complaint, that—as Plaintiff's

supervisor—Mr. Carrington knew of Plaintiff's gender and that—as an individual to whom

Plaintiff appealed the February 21, 2012 LOW—Mr. Carrington knew that she had made a

complaint.

### b.    LOWs

Defendant also argues that "Plaintiff does not allege facts establishing the basis for

the LOW[s], or showing that the basis was false or unsupported" and that, "without

knowing the basis for the LOW[s], the facts alleged, even if taken as true fail to show a

causal link between the LOW[s] and her gender or complaint about Budnick."  (Def.'s

Mem. at 16; see id. at 18.)  The Court disagrees to the extent that Plaintiff asserts a

retaliation claim.  However, Plaintiff's allegations tying the LOWs to her gender are too

conclusory to support a sex discrimination claim.

As for the first LOW, Plaintiff alleges in her Second Amended Complaint that Mr.

Budnick sexually harassed her on May 20, 2011 during the course of an employment

review, that she reported Mr. Budnick's conduct to Mr. Hines in May 2011, that Mr. Hines

thereafter placed her under investigation "for lack of candor" based on information provided

by Mr. Budnick, that the investigation continued even after Plaintiff's supervisors

discovered that Mr. Budnick had been lying, and that Mr. Hines issued the LOW because of

her gender and report of sexual harassment. (Second Am. Compl. ¶¶ 6, 9–11, 19–22, 24,

31.)

These allegations describe the basis for the LOW and assert that it was false or

unsupported, and they also show a causal link between the LOW and retaliation—the LOW

was issued as a result of an investigation that began after Plaintiff reported sexual

harassment and continued even after those conducting the investigation learned that Mr.

Budnick had provided false information.  These allegations do not, however, sufficiently

assert a claim for sex discrimination.  Like the plaintiffs in <u>Hager</u> and <u>McCleary-Evans</u>,

Plaintiff here merely makes a conclusory allegation that the LOW was issued because of her

gender.  She does not even allege that similarly situated males were treated differently, or

any facts that would support such a conclusion.

As for the second LOW, Plaintiff alleges that she was told during a meeting with

Mr. Schwartz that she would receive a LOW for the issues discussed during the meeting,

and one such issue that was allegedly discussed was her belief that she was being harassed

and subjected to a hostile work environment.  Plaintiff also alleges that, although Mr.

Schwartz issued the LOW for Plaintiff's alleged failure to follow instructions, careless

performance of duties, and unprofessional conduct, the LOW actually was given to Plaintiff

because of her gender and reports of sexual harassment.  (<u>Id.</u> ¶ 82.)  Again, these allegations

not only describe the alleged basis for the LOW and assert that it was false, but they also show a causal link between the LOW and retaliation—Plaintiff was told she would receive the LOW for issues discussed during a meeting in which she complained of sexual harassment and a hostile work environment, and the LOW was in fact issued. These allegations do not, however, sufficiently assert a claim for sex discrimination. Like the plaintiffs in Hager and McCleary-Evans, Plaintiff here merely makes a conclusory allegation that the LOW was issued because of her gender. She does not allege that similarly situated males were treated differently, or any facts that would support such a conclusion.

As for Defendant's argument that Plaintiff has failed to adequately allege but-for causation in her retaliation claim, the Court disagrees. Defendant cites to University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013), for the proposition that Title VII retaliation claims require proof of but-for causation to succeed, (Def.'s Mem. at 21), but the present action is merely at the pleadings stage. At any rate, Plaintiff's causation allegation in her retaliation claim is sufficient to encompass but-for causation:

> Because of the Plaintiff's reports and opposition to the sexual harassment, EEO complaints and complaint in Federal District Court, the Defendant retaliated against the Plaintiff in her employment, including but not limited to, subjecting her to an unnecessary investigation, re-assigning her job duties, suspending her security clearance, interfering with her ability to transfer or advance within the Defendant, subjecting her to false disciplinary action, subjecting her to inaccurate PFP's, and creating an intolerable and hostile work environment.

(Second Am. Compl. ¶ 148.)

Finally, although Defendant points to the Eighth Circuit's decision in Powell v. Yellow Book USA, Inc., 445 F.3d 1074 (8th Cir. 2006), for the proposition that a written reprimand is not an adverse employment action, Defendant acknowledges that the court's conclusion in that case was based on the plaintiff's inability to point to a resulting cut in pay or other significant change to the conditions of her employment. (Def.'s Reply Mem. in Supp. of Mot. to Dismiss [Doc. No. 49] at 7–8.) Here, however, Plaintiff alleges that the LOWs have hindered and will continue to hinder her career advancement at the OIG.

For these reasons, Plaintiff's retaliation claim may proceed on the basis of the LOWs and the alleged March 7, 2012 denial of a promotion, but Plaintiff's sex discrimination claim may proceed only to the extent that it is based on the alleged March 7, 2012 denial of a promotion.

### 2.      Hostile work environment

As discussed above, Plaintiff's hostile work environment claim is timely to the extent that it is based on the investigation into Plaintiff's character—and the related non-discrete conduct—that was allegedly undertaken in retaliation for her report of sexual harassment and that culminated in issuance of the LOWs. Thus, Plaintiff's claim is essentially one for a retaliatory hostile work environment. See Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1042 (8th Cir. 2007) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006)) ("In Burlington Northern, the [U.S. Supreme] Court expressly held that retaliation claims under Title VII could be based on a hostile work environment and need not be based solely on discrete adverse employment actions that affect the terms or conditions of employment."). According to the Eighth Circuit, the

"standard to define the concept of a hostile work environment for the purpose of retaliation claims under Title VII" is:  "[A]ctions are considered materially adverse and are actionable in Title VII retaliation claims if the actions 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Id. (quoting Burlington N., 548 U.S. at 68).  Under this standard, "the significance of any given act of retaliation will often depend upon the particular circumstances."  Burlington N., 548 U.S. at 69.  In other words, "an act that would be immaterial in some situations is material in others."  Id. (citation and internal quotation marks omitted).

Here, Plaintiff alleges that as a result of, or during, the investigation into her character, her supervisors re-assigned Plaintiff to desk duty, suspended her security clearance, confiscated her firearm and vehicle, limited her job duties, gave her PFP scores much lower than the computer-generated scores, required her to re-attend certain training and perform bi-weekly case reviews, gave her contradictory instructions, and issued unfounded LOWs.  Although Defendant contends that such facts have not been pled with sufficient detail, Plaintiff does in fact provide the names of the individuals who took these actions, the dates on which they occurred, and the purported reasons for the actions.  Whether these actions are sufficiently adverse to be actionable is not a matter that can be resolved at this stage of the proceedings—Plaintiff has alleged that Defendant's ongoing acts of retaliation affected her income, career advancement, and professional reputation, and discovery is necessary to place these allegations in context.

## IV.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT** Defendant's Motion to Dismiss [Doc. No. 40] is

**GRANTED IN PART AND DENIED IN PART**, as detailed herein.


Dated:  July 10, 2015                              s/Susan Richard Nelson
                                                   SUSAN RICHARD NELSON
                                                   United States District Judge