## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Millicent Kirby, | Case No. 14-cv-270 (SRN/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Megan Brennan, Postmaster General, | |
| Defendant. | |

Jeffrey D. Schiek, Philip G. Villaume, Thomas Priebe, and Lisa McLeod-Lofquist, Villaume & Schiek P.A., 2051 Killebrew Drive, Suite 611, Bloomington, Minnesota 55425, for Plaintiff.

Matt J. Cole and Timothy Vavricek, United States Attorney's Office, 111 Seventh Avenue Southeast, Box 1, Cedar Rapids, Iowa 52401, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.     INTRODUCTION

Plaintiff Millicent Kirby, an employee of the United States Postal Service, Office of Inspector General ("OIG"), brought this suit against Defendant Megan Brennan,[1] the Postmaster General, alleging sex discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*  Defendant now moves for summary judgment on those claims.  (*See generally*

---

[1] The original named defendant in this matter was Patrick R. Donahoe, Postmaster General until February 2015.  Upon Donahoe's retirement, Brennan automatically substituted as defendant.  *See* Fed. R. Civ. P. 25(d).

Def.'s Mot. for Summ. J. [Doc. No. 73].)  For the reasons set forth below, Defendant's Motion is granted.

## II.   BACKGROUND

### A.   Factual History

The events underpinning this lawsuit stem from a background interview conducted on May 20, 2011.  As part of her duties as a special agent with the OIG, Kirby was required to undergo a full background check every five years.  (*See* Priebe Aff. [Doc. No. 78], Ex. J at 19.)  On this particular occasion, the interview was conducted by an outside contractor, Daniel Budnick.  (*See id.*, Ex. P at 13-14.)  According to Kirby, Budnick made several sexually-suggestive or inappropriate remarks during the interview, including discussing his wife's breasts, referring to his testicles, and repeatedly telling Kirby that she was "beautiful."  (*See id.*, Ex. Q ("Kirby Dep.") at 18-19.)  After the interview concluded, Budnick also apparently asked Kirby's co-worker, Stephen Pizinger, if she had ever appeared in a pornographic video.  (*See* Priebe Aff., Ex. K at 16-17.)

Kirby immediately reported Budnick's inappropriate behavior to her supervisor, Assistant Special Agent in Charge ("ASAC") Mark Hines.  However, Kirby declined to make a formal complaint because she feared Budnick might retaliate in some way.  (*See* Kirby Dep. at 22.)

Approximately five months after her interview with Budnick, Kirby was called in to meet with ASAC Hines regarding certain red flags that had arisen as a result of her background check.  In particular, the background check had disclosed that Kirby's live-in

boyfriend, Todd Weyker, had an extensive criminal history, which Kirby had failed to disclose to Budnick.  (*See* Cole Decl. [Doc. No. 76], Exs. 6, 7.)  Complicating matters, it later emerged that although Kirby had properly disclosed that she was living with Weyker, Budnick had failed to ask whether he had a criminal record.  Instead, Budnick had improperly recorded—on his own initiative—that Kirby did not associate with individuals with criminal records.  (*See* Priebe Aff., Ex. B at 4.)  Apparently in light of this discrepancy, the OIG had asked ASAC Hines to determine whether Kirby even knew that she was living with a felon.  (*See* Cole Decl., Ex. 21 ("Hines Dep.") at 12.)

During her interview with ASAC Hines, Kirby conceded that she did indeed know of Weyker's criminal history.  (*Id.*, Ex 7 at 1.)  ASAC Hines relayed this information to his superiors, and the OIG determined that an internal affairs (or "SID") investigation was warranted out of concern that Weyker might have improper access to Kirby's service weapon.  (*See* Hines Dep. at 11.)  While the SID investigation was ongoing, ASAC Hines placed Kirby on "desk duty," which entailed various material changes to her job duties, and also required that she relinquish her service vehicle and weapon.  (*See* Priebe Aff., Ex. J at 29-30.)  In his deposition, ASAC Hines admitted that this was the first time he had ever put anyone on desk duty, and Pizinger testified that he "had never seen" anyone else placed in that position at the OIG.  (*Id.* at 30; Priebe Aff., Ex. K at 103.)

In her interview with the SID investigator, Kirby revealed that she frequently left her duty weapon unsecured on her kitchen counter when at home.  (Cole Decl., Ex. 3 at 14-16.)  This action is apparently in violation of OIG firearms policy, which requires that "OIG firearms shall be secured at [special agent's] residences in a manner to preclude

access to the weapon by anyone other than the [special agent] to whom it is issued." (*See id.*, Ex. 9 at 1.)

On the basis of the completed SID report, ASAC Hines issued a Letter of Warning ("LOW") in Lieu of a Three-Day Time-Off Suspension to Kirby on February 21, 2012. (*See generally id.*)  The LOW levelled two specific charges against Kirby stemming from her interview with Budnick: (1) that she had been careless in the performance of duty due to her failure to follow the OIG firearms policy, and (2) that she had improperly withheld information relating to Weyker's criminal history during her background interview.  (*See id.*)  With regard to the latter charge, ASAC Hines asserted that even though Kirby may not have thought Weyker's criminal record was relevant to the background check, she had a duty to report such information voluntarily to the OIG and let her superiors determine its relevance.  In ASAC Hines's view, Kirby's conduct did not meet the high standard expected of OIG personnel.  (*Id.* at 2.)

Kirby appealed the LOW to Special Agent in Charge ("SAC") David Barnes, her third-line supervisor.  SAC Barnes ultimately sustained the charges in the LOW, although at Kirby's request he amended the first charge to read "Violation of Firearms Policy" instead of "Careless Performance of Duties."  (*See* Priebe Aff., Ex. S.)  In accordance with OIG policy, Kirby then appealed SAC Barnes's decision to her fifth-line supervisor, Deputy Assistant Inspector General for Investigations ("DAIGI") Lance Carrington.  (*See* Cole Decl., Ex. 20 at 20.)  It is undisputed that DAIGI Carrington had never met Kirby.  (*See* Cole Decl., Ex. 26 at 7.)  After reviewing the LOW and the SID report, DAIGI Carrington decided to uphold the violations of firearms policy charge, but rejected the

withholding information charge. (*See id.*, Ex. 10 at 1.)  At his deposition, DAIGI Carrington testified that he thought that ASAC Hines and SAC Barnes were "a little overly sensitive" to the withholding information charge, and that the evidence did not substantiate their opinions. (*See* Priebe Aff., Ex. T at 27.)  Nonetheless, he agreed with SAC Barnes that Kirby's failure to follow the OIG firearms policy was "extremely careless" and "not acceptable." (*See* Cole Decl., Ex. 10 at 2.)  In light of the revised charges, however, DAIGI Carrington decided to "mitigate the penalty from a Letter of Warning in Lieu of a Three Day Time-Off Suspension to a Letter of Warning." (*Id.* at 3.) The LOW was to remain in Kirby's personnel file for two years, and then be removed. (Cole Decl., Ex. 20 at 32.)

On March 7, 2012, Kirby applied for an ASAC position in Greensboro, North Carolina. (*Id.* at 21.)  A review panel consisting of ASACs Mary Giberson, Shafee Carnegie, and George Castillo convened to consider the qualifications of the twelve applicants for the position. (*See* Cole Decl., Ex. 13. at 1-2.)  Kirby and three male applicants received an overall review score of zero points on the "Team Rating Worksheet," based on failure to demonstrate minimum proficiency in one or more of the evaluation criteria. (*See id.*, Ex. 16C at 3.)  Accordingly, Kirby's name was not forwarded to the selecting official for the Greensboro position.

Kirby testified that she was not given a fair opportunity to compete for the Greensboro position "because Lance Carrington was the DAIGI over the area." (Kirby Dep. at 163.)  In her opinion, the denial of a chance to interview for the job was "part of the retaliation for me filing a complaint." (*Id.*)  However, all three members of the

review panel submitted affidavits indicating that they did not know Kirby at the time they made their decision, and did not know about any complaints she had made relating to sex discrimination, retaliation, or hostile work environment.   (*See id.*, Exs. 13, 14, 15.) ASACs Giberson and Castillo also filed supplementary affidavits indicating that they were unaware of the existence of the 2012 LOW.[2]   (*See* Second Cole Decl., Exs. 13A, 14B.)   DAIGI Carrington likewise filed a supplementary affidavit stating that he did not discuss the LOW with any individual involved with hiring for the Greensboro position, and did not participate in the selection process.   (*See id.*, Ex. 28.)   Ultimately, the record shows that a male candidate with the highest overall score, but with fewer years of work experience than Kirby, was chosen for the position.[3]

Kirby was given a second LOW on February 25, 2014—this time by ASAC Joseph Schwartz.   The LOW documented three instances of failure to follow instructions, one instance of careless performance of duties, and two instances of unprofessional conduct.   (*See* Cole Decl., Ex. 11.)   Kirby appealed ASAC Schwartz's determination to Deputy Special Agent in Charge ("DSAC") Steven Stuller, who upheld the LOW on all counts.   (*See id.*, Ex. 24 at 9.)

## B.   Procedural History

Kirby brought this lawsuit in January 2014, and filed the operative complaint on

---

[2] Somewhat inexplicably, Defendant did not submit a supplementary affidavit for ASAC Carnegie.   Because Kirby likewise failed to depose him, there is no evidence in the record regarding whether he did or did not know of the 2012 LOW.

[3] The selected candidate tied with three other candidates for the Greensboro position in scoring a total score of 83 on the Team Rating Worksheet.   (Cole Decl., Ex. 16C at 3.) The record suggests that Kirby had nine more years of experience as a federal criminal investigator, however.   (*See* Priebe Aff., Exs. N, O.)

January 8, 2015.  (*See* Second Am. Compl. [Doc. No. 39].)  In that document, Kirby set forth two causes of action against Defendant: "Discrimination in Violation of Federal Law" (Count I), and "Retaliation/Reprisal in Violation of Federal Law" (Count II).  (*See id.* at ¶¶ 112-79.)  Defendant moved to dismiss the complaint on February 9, 2015.  (*See* Mot. to Dismiss [Doc. No. 40].)

On July 10, 2015, this Court entered an order granting Defendant's motion in part, and denying it in part.  *See Kirby v. Donahoe*, No. 14-cv-270 (SRN/TNL), 2015 WL 4208694 (D. Minn. July 10, 2015).  A few aspects of that order are of particular relevance to this decision.  First, because Kirby failed to specify in her complaint what federal statute provided the basis for her claims, the Court construed those claims as arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[4]  Second, although the complaint specifically alleges only claims for discrimination and retaliation, the Court noted that Kirby "repeatedly refers to being subjected to a 'hostile work environment.'"  *Kirby*, 2015 WL 4208694, at *5.  Accordingly, the Court analyzed the pleadings as stating causes of action for discrimination, retaliation, and also retaliatory hostile work environment.  *See id.* at *5, 13.  Finally, although Kirby's complaint alleged numerous factual bases supporting her claims, the Court concluded that many of those facts were either time barred or insufficiently pleaded.  *See id.* at *5-13.  Thus, at this stage of the proceedings, only the following aspects of Kirby's claims remain justiciable: (1) for her sex discrimination claim, the alleged failure to promote to the position of ASAC in Greensboro, North Carolina; (2) for her retaliation claim, the 2012 LOW, the

---

[4] Notably, neither party has challenged that determination.

2014 LOW, and the failure to promote to the Greensboro ASAC position; and (3) her retaliatory hostile work environment claim. *See id.* at *11, 13-14.

## III.   DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A fact is "material" only if it may affect the outcome of the lawsuit. *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). Likewise, an issue of material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The moving party bears the burden of establishing a lack of genuine issue of fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the reviewing court must view the evidence and any reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

However, the nonmoving party may not merely rely on unsupported allegations or denials to successfully avoid summary judgment. *See Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010).   Instead, it must show through the presentation of admissible evidence that a genuine issue of fact exists such that a "jury could reasonably find [in its favor]." *Anderson*, 477 U.S. at 252.   In this regard, the existence of a scintilla of evidence in support of the non-moving party's position will not suffice. *See Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008).   Further, "[t]here is

no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (quoting *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999)).

### B.   Discrimination

Title VII makes it unlawful for an employer to, among other things, "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."   42 U.S.C. § 2000e-2(a)(1). Discrimination occurs when sex is "a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* at § 2000e-2(m).

Where direct evidence of discrimination is lacking, as here, the plaintiff's claims are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See Robinson v. Am. Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014).   Kirby thus has the initial burden of establishing a *prima facie* case of discrimination, at which point the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *See McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007).   Assuming Defendant meets this burden, the onus is on Kirby to establish that the reason offered by Defendant is pretext. *Id.*   While the burden of production shifts at various points under *McDonnell Douglas*, it should be emphasized that the burden of proving that the employer's conduct was motivated by unlawful intent remains at all times with the plaintiff. *See Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1119 (8th Cir. 2006) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

To establish a *prima facie* case of discrimination in a failure-to-promote case, the plaintiff must show "(1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Younts v. Fremont Cty.*, 370 F.3d 748, 754 (8th Cir. 2004) (citation omitted). The burden at this stage is not onerous, *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007), and the Defendant concedes, for purposes of this motion, that a *prima facie* case of discrimination exists. (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. [Doc. No. 75] ("Def.'s Mem. in Supp.") at 13.) Likewise, Kirby does not dispute that Defendant has offered a legitimate, nondiscriminatory explanation for its failure to promote her—that she was simply not the most qualified candidate for the Greensboro ASAC position. (*See* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. No. 77] ("Pl.'s Mem. in Opp'n") at 28.) Accordingly, "the issue is whether [Kirby] offers sufficient evidence of pretext." *Cox v. First Nat'l Bank*, 792 F.3d 936, 939 (8th Cir. 2015). On review of the record, the Court is left with the conviction that she has not done so.

In order to demonstrate a genuine issue of material fact regarding pretext, Kirby must, in this instance, show that Defendant hired a less qualified candidate. *See id.* "Where . . . the employer contends that the selected candidate was more qualified for the position than the plaintiff, a comparative analysis of the qualifications is relevant to determine whether there is reason to disbelieve the employer's proffered reason for its employment decision." *Torgerson*, 643 F.3d at 1048 (citation omitted). "If the comparison reveals that the plaintiff was only similarly qualified or not as qualified as the

selected candidate, then no inference of . . . discrimination would arise." *Id.* (citation and quotation omitted).   Notably, it is the employer's prerogative to identify those strengths that constitute the best qualified applicant. *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 916 (8th Cir. 2007).

Here, the record contains no evidence, besides Kirby's own say-so, from which a jury could conclude that she was objectively more qualified than the candidate Defendant ultimately chose for the Greensboro ASAC position.  *Cf. Torgerson*, 643 F.3d at 1050 (noting that employees' own "subjective evaluation" of their "relative performance" was "simply irrelevant" to issue of discrimination).   Indeed, the only evidence before the Court on the matter suggests that Kirby was *not* qualified for the position, as she received a score of zero on the Team Rating Worksheet for failing to demonstrate proficiency in one or more of the evaluation criteria.

Nonetheless, Kirby argues that a fact issue exists regarding the objectivity of the selection process, because the chosen candidate had fewer years of overall work experience than she did.  In her view, this fact alone is sufficient to raise questions about Defendant's stated reason for not hiring her.  The Court disagrees.  While it is apparently true that Kirby had more years of experience as a federal criminal investigator than the successful applicant, that fact, taken in context, does not suffice to raise an inference of discrimination.[5]  The Court notes, for instance, that both candidates had served as special

---

[5] Kirby highlights the fact that Defendant initially misstated the number of years of relevant work experience possessed by the successful candidate for the Greensboro ASAC position, and argues that this discrepancy entitles her to an inference that Defendant's reasons for not hiring her are pretextual.  (*See* Pl.'s Mem. in Opp'n at 30.)

agents with the OIG for the same number of years.  (*See* Priebe Aff., Exs. N, O.)   More

pertinently, Kirby has presented no evidence to suggest the Defendant was motivated by

improper considerations in choosing to weigh the candidates' Team Rating Worksheet

scores more heavily than overall work experience.  *Cf. Cox*, 792 F.3d at 939 (finding no

material issue of fact as to pretext where plaintiff had more overall work experience but

chosen candidate scored higher on evaluation matrix).  Taken as a whole, there is simply

no evidence from which a jury could reasonably conclude that Kirby was objectively the

more qualified candidate.

     In her opposition memorandum, Kirby attempts to turn the lack of evidence of her

own comparative qualifications around on Defendant by arguing that, because Defendant

has failed to present a detailed comparison of the applicants' resumes and test scores, *she*

has failed to demonstrate a lack of a genuine issue of material fact as to discrimination.

(*See* Pl.'s Mem. in Opp'n at 28, 30 n.10.)  This argument reveals a misunderstanding of

who bears what burden at this stage of the litigation.  Put simply, it is not Defendant's job

to *disprove* pretext.  Rather, it is the applicant's responsibility to show that the defendant

hired a less qualified candidate.  *Torgerson*, 643 F.3d 1048; *Loeb v. Best Buy Co.*, 537

F.3d 867, 875 (8th Cir. 2008).  Here, that means that the onus was on Kirby to

demonstrate in what ways her qualifications were superior to her competitor's, and mere

---

The Court sees no reason to conclude that the original misstatement—since corrected—
was anything other than inadvertent.  In any event, even taking the correct figure into
account, the Court still finds that Kirby has failed to demonstrate a fact issue as to
pretext—the Defendant has consistently stated that the reason Kirby was not given an
interview was because she scored a zero on the Team Rating Worksheet, *not* because she
had insufficient work experience.

incantation of the summary judgment standard does not cure the deficiency. *See id.* at 1052 ("In this case, a reasonable jury could not infer pretext from the *absence* of evidence.").

Kirby may also demonstrate pretext by "persuading the court that a prohibited reason more likely motivated the employer" than the reason put forth by Defendant. *See Cox*, 792 F.3d at 939 (citation omitted). Here, Kirby points to her belief that the affidavits of ASACs Giberson, Carnegie, and Castillo, indicating that they did not know who Kirby was or that she had engaged in any protected activities when they made their hiring decision, are not credible. (*See* Pl.'s Mem. in Opp'n at 30.) In support of her belief, Kirby notes that a document was obtained during discovery indicating that an unrelated hiring official, for an unrelated position, was in fact aware that Kirby had been the subject of a SID investigation and had received a LOW. (*See* Priebe Aff., Ex. A.) Kirby argues that this evidence casts serious doubt on Defendant's claim that the hiring officials for the Greensboro ASAC position were screened off from such information.

The Court is unconvinced by this argument. Despite having ample opportunity to do so, Kirby failed to depose the unrelated hiring official to uncover how he came in possession of the information listed in the exhibit, or to determine whether such information was typically shared with hiring officials. Instead, Kirby puts forth nothing other than her own speculation as to what the *actual* hiring panel for the Greensboro position saw. Such speculation is certainly not sufficient, when set against three

unrefuted affidavits to the contrary,[6] to create a genuine issue of material fact regarding motivation. *Cf. Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 718 (8th Cir. 2000) (noting that "pure speculation" as to defendant's actions and motives was insufficient to discredit defendant's legitimate, non-discriminatory reason for terminating plaintiff).

Accordingly, the Court concludes that Kirby has failed to demonstrate the existence of a genuine issue of material fact as to pretext and Defendant's motion must be granted on this claim.

### C.     Retaliation

Kirby contends that Defendant engaged in various retaliatory activities in response to her protests regarding Budnick's conduct and her decision to file complaints with the Equal Employment Opportunity Commission ("EEOC") and this Court. "Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because [she] has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). As previously noted, the Court has so far permitted Kirby's retaliation claim to proceed as it relates to three discrete events: (1) the

---

[6] Kirby also argues that the Court should disregard the affidavits of ASACs Giberson, Carnegie, and Castillo, because they are "clear hearsay, pursuant to Fed. R. Evid. 801(c)." In her view, "[t]hese affidavits are out-of-court statements, used to prove the truth of the matters asserted," and thus cannot be considered by the Court. However, Rule 56 of the Federal Rules of Civil Procedure explicitly provides that parties may support their motions with, *inter alia*, affidavits. *See* Fed. R. Civ. P. 56(c). Further, the affidavits themselves are not based on hearsay, and are clearly the product of personal knowledge. *See id.*

failure to promote to the Greensboro ASAC position; (2) the 2012 LOW; and (3) the 2014 LOW.  The Court will consider these three *seriatim*.

### 1.     The Greensboro ASAC Position

Because Kirby presents no direct evidence of retaliation, the *McDonnell Douglas* test once more supplies the relevant analytical framework.  *See Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011).  At the *prima facie* stage, Kirby must thus show that (1) she engaged in protected conduct, (2) she suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct.  *Id.*  With regard to the Greensboro ASAC position, Defendant contends that Kirby cannot demonstrate the third element of her *prima facie* case because "it is undisputed that no one in the Greensboro hiring process knew about Plaintiff's complaints of sex discrimination, retaliation, or hostile work environment."  (*See* Def.'s Mem. in Supp. at 16.)

Reviewing the relevant case law, the Court cannot disagree.  The Eighth Circuit has repeatedly made clear that causation cannot be established where the evidence shows the hiring committee had no knowledge of any protected activities.  *See, e.g.*, *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006) ("With respect to the first instance of non-promotion, Robinson cannot show causation because none of the members of the hiring committee knew about her pending EEOC complaint."); *Wilson v. Northcutt*, 411 F.3d 586, 592-93 (8th Cir. 2006) (noting that decision-makers must have awareness of the protected activity).  For the reasons stated previously in Part III.B of this opinion, there is no evidence (speculation aside) to suggest that the three members of the Greensboro

ASAC hiring committee had any knowledge of Kirby's protected activities, or even that she had received a LOW.

Perhaps recognizing the lack of concrete evidence of causation, Kirby highlights the temporal proximity between her receipt of the LOW on February 21, 2012 and her application for the Greensboro position on March 7, 2012.  (*See* Pl.'s Mem. in Opp'n at 40.)  In her view, the shortness of this interlude suggests a connection between the LOW and her failure to secure promotion.  It is true, as this Court has previously recognized, that a close connection in time between protected conduct and an adverse employment event can suffice to establish causation for purposes of the plaintiff's *prima facie* case. *See, e.g.*, *Boettcher v. Express Servs., Inc.*, No. 13-cv-1231 (SRN/JJG), 2014 WL 2922355, at *4 (D. Minn. June 27, 2014).  But as Kirby's own cited authority indicates, such temporal proximity arguments will prevail only as "the final straw if the issue is close."  *Schoonover v. Schneider Nat'l Carriers, Inc.*, 492 F. Supp. 2d 1103, 1157 (S.D. Iowa 2007).  Here, because the sole evidence on the matter indicates that the Greensboro hiring committee was not aware of the LOW's existence, the Court is left to draw the only plausible inference to be found—that the temporal proximity was a coincidence only.

Finally, Kirby argues that even if the hiring committee did not directly know of her protected conduct, factual issues exist as to whether DAIGI Carrington improperly sabotaged her chances of promotion.  (*See* Pl.'s Mem. in Opp'n at 37-38.)  In so contending, she asserts a claim of cat's paw liability.  *See Torgerson*, 643 F.3d at 1045 (observing that "if a non-decisionmaker performs an act motivated by a discriminatory

bias that is intended to cause, and that does proximately cause, an adverse employment action, then the employer has cat's-paw liability").  Under that theory, "an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decisionmaker where the decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design." *Richardson v. Sugg*, 448 F.3d 1046, 1060 (8th Cir. 2006) (citation omitted).  Kirby asserts that DAIGI Carrington knew about her protected activities and the LOW she had received, and that he had to authorize the promotion of the candidate selected by the Greensboro hiring committee.  In her view, a fact issue thus exists as to whether the hiring committee's seemingly detached determination was not tainted by DAIGI Carrington's bias.

The problem with this theory, however, is that the only actual evidence on the matter conclusively establishes that DAIGI Carrington exerted no influence over the Greensboro hiring decision.[7]  Both ASACs Giberson and Castillo testified that they did not discuss Kirby's application, credentials, or disciplinary history with DAIGI Carrington.  (*See* Second Cole Decl., Exs. 13A, 14A.)  Likewise, DAIGI Carrington testified that he did not participate in the selection process before the final decision was made, did not review the applications of those who applied for the position, did not

---

[7] Once again, Kirby argues that evidence showing that an unrelated hiring official, for an unrelated position, was aware of Kirby's disciplinary issues calls into question the credibility of the Greensboro committee.  Given that there was no overlap between the two hiring processes, this argument is nothing more than speculation, and cannot overcome Defendant's unrebutted evidence to the contrary.  *See Buettner v. Arch Coal Sales Co.*, 216 F.3d at 718.

participate in any interviews, did not know Kirby was a candidate, did not discuss the applications with anyone on the hiring committee, and did not discuss Kirby's LOW with any of the hiring officials.  (*See id.*, Ex. 28.)

Even were the Court to conclude otherwise, however, and find that Kirby had established her *prima facie* case, it would still find that she has failed to establish pretext. As the Court has discussed, Defendant has consistently articulated a legitimate reason for the failure to promote Kirby to the ASAC position in Greensboro—that she was not the most qualified person for the job as demonstrated by the selection process.  Kirby has no more refuted Defendant's reason in the context of retaliation than she has in the context of discrimination.  Accordingly, the Court concludes that there is no genuine issue of material fact as to discriminatory retaliation related to the Greensboro failure-to-promote incident.

### 2.    The LOWs

Turning to the LOWs Kirby received in 2012 and 2014, Defendant again argues that Kirby cannot establish her *prima facie* case of retaliation.  In this instance, however, Defendant directs the Court's attention to the second element: the existence of a "materially adverse employment action."  As Defendant notes, both the 2012 and the 2014 LOW have been rescinded and are no longer in Kirby's personnel file.  (*See* Def.'s Mem. in Supp. at 17-18.)  Because an adverse employment action must be one that causes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761

(1998), Defendant contends that the LOWs simply do not qualify.

Once again, the Court agrees. Several courts, including this one, have had cause over the years to consider whether a letter of warning can by itself constitute an adverse employment action. As best the Court can tell, the answer has been uniformly negative. *See, e.g.*, *Ogden v. Brennan*, 657 F. App'x 232, 236 (5th Cir. 2016) (observing that a rescinded letter of warning was not an adverse employment action); *Kimble v. Donahoe*, 511 F. App'x 573, 575 (7th Cir. 2013) (same); *Smith v. Potter*, 252 F. App'x 224, 230 (10th Cir. 2007) (same); *Chicocki v. U.S. Postal Serv.*, No. 04-cv-4355 (DSD/SRN), 2005 WL 1324078, at *3 (D. Minn. May 26, 2005) (same). While the Eighth Circuit itself has not had cause to consider the matter, in a similar context that court has determined that negative performance reviews do not, without more, constitute adverse employment actions for purposes of Title VII. *See, e.g.*, *LaCroix v. Sears, Roebuck and Co.*, 240 F.3d 688, 692 (8th Cir. 2001); *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000); *Cossette v. Minn. Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999).

In response, Kirby argues that while LOWs by themselves may not be adverse employment actions, they can rise to that level when they form the basis for some alteration in the conditions of employment. While that may be true, Kirby has failed to present evidence that the conditions of *her* employment have been altered. For instance, nowhere does she show that she suffered a reduction in salary, or received a negative reassignment,[8] or lost employment benefits as a result of either LOW. *See Burlington*,

---

[8] Notably, while Kirby was reassigned to desk duty during the course of the SID investigation, that reassignment ended the same day that the 2012 LOW was issued, and

524 U.S. at 761.  Although Kirby has alleged that the 2012 LOW impacted her chances of securing the Greensboro ASAC promotion, this Court has already explained that the evidence does not support her allegation.  Thus, in the absence of any evidence that either LOW contributed to an alteration in her conditions of employment, the Court finds that Kirby has failed to raise a genuine issue of material fact with regard to her prima facie case.  *Cf. Smith*, 252 F. App'x at 230 ("Mr. Smith failed to show that the Letter of Warning was an 'adverse employment action' given that he worked for almost two years after he received it, and he was never demoted, suspended, or terminated as the result of it.  Moreover, although Mr. Smith alleged that the Letter of Warning caused him to be scrutinized more closely and bypassed for favorable job assignments, he has presented no evidence to support those claims.")   Accordingly, Defendant is entitled to summary judgment as to the retaliation claim.

### D.    Retaliatory Hostile Work Environment

Finally, Kirby alleges that she has been subjected to "countless and ongoing acts of retaliation" as punishment for her complaints of harassment, etc.  As evidence to support this allegation, she points particularly to: (1) ASAC Hines's decision to reassign her to desk duty while the SID investigation was ongoing, and accompanying loss of various privileges; (2) a low pay-for-performance score she received in November 2011; (3) being required to attend the same training on more than one occasion; (4) being required to participate in bi-weekly case reviews with a supervisor in 2014; (5) contradictory instructions from supervisors; and (6) unfounded and disparate discipline,

---

thus was not a consequence of the LOW.  (*See* Priebe Aff., Ex. J at 43.)

including the 2012 and 2014 LOWs.  (*See* Pl.'s Mem. in Opp'n at 46.)

Although the Eighth Circuit has recognized the viability of a retaliatory hostile work environment claim, *see Stewart*, 481 F.3d at 1042, it has not set forth the elements necessary to state such a claim.  *See Scott v. City of Sioux City*, 68 F. Supp. 3d 1022, 1037 (N.D. Iowa 2014).  Nonetheless, other circuits to have considered the matter are in apparent agreement that, at minimum, a plaintiff must establish the following *prima facie* case: (1) that she engaged in protected activity; (2) the defendant knew of her protected activity; (3) she was subjected to severe or pervasive retaliatory harassment; and (4) the protected activity is causally connected to the harassment.  *See, e.g.*, *Kelly v. Dun & Bradstreet, Inc.*, 641 F. App'x 922, 923 (11th Cir. 2016); *Khamati v. Sec'y of Dep't of the Treasury*, 557 F. App'x 434, 443 (6th Cir. 2014); *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005).

Retaliatory hostile work environment case law makes clear that the keystone of the plaintiff's case is the requirement that the retaliation perpetrated by the defendant be severe or pervasive.  *See Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012); *Shukh v. Seagate Tech., LLC*, No. 10-cv-404 (JRT/JJK), 2014 WL 1281518, at *24 (D. Minn. Mar. 31, 2014).  In order to meet this high threshold, the harassment must be "severe enough to affect the terms, conditions, or privileges of [the plaintiff's] employment." *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015) (quotation omitted). Additionally, the harassment must be "objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).  In

assessing the objective offensiveness of the defendant's actions, courts must consider all the relevant circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787-88 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)).   Because Title VII was not enacted to create a "general civility code," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998), "rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim."   *Noviello*, 398 F.3d at 92.

Judged against this demanding standard, it is clear that Kirby cannot show that the alleged retaliatory harassment was so "severe or pervasive" as to affect a term, condition, or privilege of her employment.   While the actions Kirby complains of may well have been petty, irritating, and even unwarranted, it is stretching beyond reason to conclude that they were of such a cruel or unreasonable nature as to seriously interfere with Kirby's ability to perform her job.   *Cf. Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 788 (8th Cir. 2007) ("As for her claims she was denied a Route Builder, was unfairly disciplined, was paid less than male RMs, was not allowed to expense pay phone calls, and was required to make inventory changes on the computer, they, at best, amount to a frustrating work environment rather than an objectively hostile work environment."); *Bradley v. Widnall*, 232 F.3d 626, 631-32 (8th Cir. 2000) (finding allegations that plaintiff's "supervisory duties were curtailed, that she was left out of the decision-making process, treated with disrespect, and subject to false complaints" insufficient to show

severity or pervasiveness of harassment); *Khamati*, 557 F. App'x at 443 (concluding that plaintiff's summary reassignment to different city, physical isolation from other employees, and subjection to months-long investigation, among other things, was not severe or pervasive harassment); *Shukh*, 2014 WL 1281518, at *24 (finding that employer's threat of manufacturing complaints against plaintiff, failure to follow its own policies in investigating discrimination complaints, and physical and psychological isolation of plaintiff did not meet "the demanding standard of a hostile work environment"). Accordingly, the Court finds that Defendant is entitled to summary judgment as to Kirby's retaliatory hostile work environment claim, as well.

## IV.    CONCLUSION

Although the Court is sympathetic to what appears to have been a difficult and at times unpleasant working relationship, it concludes that Kirby has failed to present facts from which a reasonable jury could find that those difficulties rose to the level of being actionable. Accordingly, the Court concludes that Defendant is entitled to summary judgment on all claims.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Defendant's Motion for Summary Judgment [Doc. No. 73] is **GRANTED**; and

2.    Plaintiff's Second Amended Complaint [Doc. No. 39] is **DISMISSED** with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 27, 2017                         s/Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge